[No. 760.]

## N. D. CHAMBERLAIN AND J. P. WINNIE, RESPONDENTS, *v.* L. STERN, APPELLANT.

POSSESSION OF PERSONAL PROPERTY.—Where certain personal property was sold on the twenty-first of November, and the testimony shows a delivery at that time, and a change of possession until April 1, but after that date and before the levy of a third party, the possession was restored to the grantor, who was in actual possession at the time of the levy as bailee: *Held,* that the court erred in finding that the change of possession continued after April 1, and in finding that the defendant took the property from the grantees.

IDEM.—Whether the change of possession that did take place was sufficiently open, unequivocal and continuous, to satisfy the statute of frauds, is a question of fact for the court or jury to determine.

CONSIDERATION OF SALE.—Where the bill of sale offered in evidence recited a consideration of $1,600, and the grantor and grantee both testified that money was paid: *Held,* that it was error to refuse to allow the defendant to ask these witnesses how much money was paid as the consideration of the alleged sale.

PLEADINGS ALLEGING FRAUD.—Where personal property is found in the possession of the execution debtor, and, after levy, is claimed by a stranger, the officer is not bound to surmise that there may have been a sale, and so attack it for fraud in his answer.

IDEM.—The officer is not bound to assail the transaction till it is brought to his knowledge, and if it makes its first appearance at the trial, he may meet it there with proof of the fraud.

FRAUD, HOW ESTABLISHED—BURDEN OF PROOF.—Proof of fraud was part of the defendant's case, but proof of the consideration was part of the plaintiff's case; to prove the amount of the consideration was not to prove fraud. Inadequacy of consideration is an element of fraud in some cases, and the burden of proving it in this case was on the defendant, but he had a right to know what the amount of the consideration was before offering proof that it was inadequate.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion.

*Harris & Coffin and Thomas H. Wells,* for Appellant.

I. The answer alleged fraud on the part of the plaintiffs, and the defendant was denied by the court his legal right to prove it. Failure of consideration, even inadequacy of price is proof (not *per se* sufficient or conclusive, but in connection with other evidence) to establish fraud; and if fraud be alleged, 'anything or fact tending to establish it, may be given in evidence. (Bump on Fraud. Conv., 507 *et seq.*, and 541 *et seq.*, and cases there cited; 2 Cal. 326; 6 Id. 47; 7 Id. 391.)

II. There was not "an actual and continued change of possession" of the property." (10 Cal. 431; 12 Id. 483.)

*Robert M. Clarke,* for Respondent.

I. It is not sufficient in pleading to charge fraud in general terms. The facts which constitute the fraud must be specially alleged. (*Castle* v. *Bader,* 23 Cal. 75; *Kent* v. *Snyder,* 30 Id. 666; *Moore* v. *Green,* 29 How. Pr., 69; *Butler* v. *Viele,* 44 Barb. 166.)

No attempt is made to charge actual fraud in the answer. On the contrary, constructive fraud is alleged and relied upon.

The averment of facts which constitute constructive fraud is an implied admission of the *bona fides* of the sale, as between the parties—of the absence of actual fraud. (*Thornton* v. *Hook,* 36 Cal. 230.) In the state of the pleadings it was not error to deny defendant's offer to prove actual fraud.

II. The delivery in the case was actual and the change of possession continuous. (*Godchaux* v. *Mulford,* 26 Cal. 316; *Gray* v. *Sullivan,* 10 Nev. 416.)

By the Court, BEATTY, J.:

This is a suit to recover certain personal property consisting of a lot of horses, alleged to be wrongfully and unlawfully detained by the defendant. The answer denies that they are the property of the plaintiffs, and alleges that they were seized by the defendant acting as constable under

certain writs of attachment and execution against one Lovejoy, who, it is averred, is the real owner. The case was tried in the district court without a jury and the findings and judgment were in favor of the plaintiffs. The defendant now appeals from the judgment and the order of the district court overruling his motion for a new trial.

The following facts were established on the trial by uncontradicted testimony: On the twenty-first of November, A. D. 1874, Lovejoy was the owner of the property in controversy and also of other cattle and horses, all of which he had in his possession on a ranch in Douglas county where he then resided. At the same time and place he had in his possession a number of horses which he was ranching for other parties. Previous to this date, and during the summer and fall of 1874, all of this stock had been kept by Lovejoy in an inclosed pasture belonging to him and situated near Carson city. On the night of November 21, Winnie, one of the plaintiffs, went to the ranch where the stock then was, obtained a bill of sale of Lovejoy's cattle and horses, and, with the assistance of Lovejoy and another person, drove them, together with the horses which Lovejoy was ranching for third parties, to the ranch of one Olds, distant a mile from Lovejoy's place. Olds agreed with Winnie to pasture the cattle and horses which he had purchased and gave him a receipt for them. The horses which are the subject of this action remained on the ranch of Olds until the first of April, but during the interval between November 21 and April 1, Lovejoy was occasionally there looking after the horses he was ranching for third parties, and during the same time he, with two others, drove the cattle which were included in the purchase of plaintiffs to Empire city. On the last mentioned date, April 1, 1875, Winnie and Lovejoy took all the horses from Old's ranch, including those which Lovejoy was ranching for third parties, drove them to Carson and put them in Lovejoy's pasture where they had been running previous to the sale. This pasture had been recently purchased by Patterson under an execution against Lovejoy, but the time for redemption had not expired and Lovejoy remained in posses-

sion., While the horses in controversy were in Lovejoy's pasture, mixed with other horses that he was ranching for third parties, and as far as appearances could show, as much his property as they had ever been, the defendant made his levy under valid process against him. There can be no doubt that when the levy was made the property was in the actual possession of Lovejoy, the execution debtor. He may not have been in possession as owner but the evidence clearly shows that he was a bailee. The district judge erred, therefore, in finding that the change of possession continued after the first of April, and that the defendant took the horses from the possession of the plaintiffs. The testimony does show a delivery at the time of the sale and a change of possession from November 21 to April 1. But after that date the possession was restored to Lovejoy. Whether the change of possession that did take place was sufficiently open, unequivocal and continuous to satisfy the doctrine of *Stevens.* v. *Irwin* (15 Cal. 507), so frequently approved by this court, was a question of fact not decided by the district court, its conclusions being based upon the erroneous finding that Lovejoy continued out of the possession.

The district court also erred in refusing to allow the defendant to ask Winnie and Lovejoy, on cross-examination, how much money was paid as the consideration of the alleged sale. The bill of sale offered in evidence by the plaintiffs recited a consideration of sixteen hundred dollars, and both Winnie and Lovejoy testified that money was paid; but when defendant asked how much, the plaintiffs objected that he had not alleged, in his answer, facts constituting actual fraud in the sale, and that proof of the amount paid was therefore wholly immaterial. The court sustained the objection, defendant excepting.

The respondents contend that the ruling was correct, and cite authorities to show that fraud cannot be proved without having been specially pleaded. This is no doubt true in the class of cases referred to, where suit is brought to set aside a conveyance or contract on the ground of fraud, or where fraud is the defense to a contract set out in the com-

plaint, or where the defendant is presumed to have knowledge of the transaction which he seeks to impeach on that ground. And there may be good reason to hold that where property is seized in the hands of a stranger to the execution, the officer must plead fraud in answer to his suit. But where the property is found in the possession of the execution debtor, and, after levy, is claimed by a stranger, the officer is not bound to surmise that there may have been a sale, and to attack it for fraud in his answer. He is not bound to assail the transaction till it is brought to his knowledge, and if it makes its first appearance at the trial, he may meet it there with proof of the fraud. (See Bump on Fraud. Convey., 508; *Gooch's Case,* 5 Co., 60; and *Ashby* v. *Minnitt,* 8 A. & E. 121.) These cases show that the defendant in this action was in a position to attack the sale for actual fraud, and the question asked was material and relevant. It was also proper cross-examination. Proof of fraud was part of the defendant's case, but proof of the consideration was part of the plaintiffs' case. To prove the amount of the consideration was not to prove fraud. Inadequacy of consideration is an element of fraud in some cases, and the burden of proving it in this case was on the defendant. But he had a right to know what the amount of the consideration was before offering proof that it was inadequate.

The judgment is reversed and the cause remanded for a new trial.